**22-13669**

IN THE

# United States Court of Appeals

## FOR THE ELEVENTH CIRCUIT

◆◆◆

MARIA EUGENIA BLANCO,

*Plaintiff-Appellant,*

—v.—

ANAND ADRIAN SAMUEL, LINDSEY ADAMS FINCH,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

## BRIEF FOR DEFENDANTS-APPELLEES

MARK J. BEUTLER
LAW OFFICES OF
  MARK J. BEUTLER, P.A.
9400 South Dadeland Blvd., Suite 600
Miami, Florida 33156
(305) 487-0942
mjb@mjbpa.com

*Attorney for Defendants-Appellees*

## CERTIFICATE OF INTERESTED PERSONS

1.    Beutler, Mark Jeffrey (Appellees' Counsel/ Defendants' Counsel)

2.    Blanco, Maria Eugenia (Appellant/Plaintiff)

3.    Cozen O'Connor (Appellees'/Defendants' Counsel)

4.    Eisenberg, Susan N. (Appellees'/Defendant's Counsel)

5.    Finch, Lindsey Adams (Appellee/Defendant)

6.    Fortney, David S. (Appellees'/Defendants'  Counsel)

7.    Fortney & Scott, LLC (Appellees'/Defendants' Counsel)

8.    Goodman, Jonathan (U.S. Magistrate Judge, S.D. Fla.)

9.    J.H. Zidell, P.A. (Appellant's Counsel/ Plaintiff's Counsel)

10.    Mark J. Beutler, P.A. (Appellees'/Defendants' Counsel)

11.    Samuel, Anand Adrian (Appellee/Defendant)

12.    Scola, Robert N. (U.S. District Judge, S.D. Fla.)

13.    Zidell, Jamie Harrison (Appellant's Counsel/ Plaintiff's Counsel)

## CORPORATE DISCLOSURE STATEMENT

Appellees certify pursuant to 11th Circuit Rule 26.1-3(b) that no publicly traded company or corporation has an interest in the outcome of the case or appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Appellees agree with Appellant that oral argument may assist the Court in resolving the issues raised in this appeal.

# **TABLE OF CONTENTS**

PAGE

CERTIFICATE OF INTERESTED PERSONS...........................C-1

CORPORATE DISCLOSURE STATEMENT...........................C-1

STATEMENT REGARDING ORAL ARGUMENT ...........................i

TABLE OF AUTHORITIES ...........................v

JURISDICTIONAL STATEMENT...........................1

STATEMENT OF THE ISSUES...........................1

SUMMARY OF THE ARGUMENT ...........................1

STATEMENT OF THE CASE...........................4

    A. Factual Background...........................4

        1. Overtime exemption issue ...........................5

        2. Statutory employer issue...........................6

    B. Procedural History ...........................7

    C. Standard of Review ...........................8

ARGUMENT AND CITATION TO AUTHORITIES ...........................9

    A. Blanco is Exempt from Overtime Pay Requirements Because She is a Nanny Who Resided at the Parents' Home for "Extended Periods of Time" ...........................9

        1. Blanco's reliance on sleep time exclusion rules is misplaced...........................15

        2. There is no authority for a "facts and circumstances" test for the Live-in domestic service employee exemption...........................25

        3. Daily off-premises activity does not defeat the Live-in exemption ...........................29

4.  No separate rule for situations where sleep time is
    essential to the domestic worker's' job duties ................... 30

5.  Sleep interruptions do not defeat the overtime exemption
    under Section 213(b)(21) .......................................... 31

6.  The Live-in exemption does not require private quarters ........ 31

7.  Blanco cannot controvert her numerous admissions
    regarding her time sleeping at the Parents' residence ........... 32

    a.  Blanco's Statement of Material Facts ..................... 33

    b.  Blanco's summary judgment and reply memoranda ......... 34

    c.  Statements made in hearing on discovery motion ........... 35

8.  Blanco was not sleeping while working ........................ 37

B.  The Court Should Defer to the DOL's 2014 Final Rule, but
    Not the DOL's amicus brief ......................................... 41

C.  The Issue of the Parents' Status as an FLSA Employer is not
    Amenable to Summary Disposition ................................ 45

    1.  The Parents are not barred from simultaneously
        disclaiming employer status and asserting the Live-in
        exemption .......................................................... 45

    2.  The joint employment issue was forfeited and is not
        properly before the Court ........................................ 45

    3.  Because Blanco's employment terminated before the
        effective date of the recission of 29 C.F.R. § 791.2, that
        provision controls in this case .................................. 47

    4.  Numerous facts in dispute preclude summary judgment on
        the issue of whether the Parents were Blanco's employer ....... 49

        a.  Defendant Lindsey Finch ................................... 49

        b.  Defendant Anand Samuel ................................. 50

PAGE

5. Blanco fails to establish that all material facts are undisputed................................................... 51

6. Blanco's evidence that the Parents were Blanco's employer is legally insufficient .................................... 52

CONCLUSION.......................................................... 53

CERTIFICATE OF COMPLIANCE.......................................... 54

CERTIFICATE OF SERVICE ............................................. 55

# TABLE OF CITATIONS

PAGE(S)

## Cases

*Alaska Trojan P'ship v. Gutierrez*,
425 F.3d 620 (9th Cir. 2005) ............................................................ 11

*Estate of Amergi ex rel. Amergi v. Palestinian Auth.*,
611 F.3d 1350 (11th Cir. 2010) ...................................................... 36

*Auer v. Robbins*,
519 U.S. 452 (1997) ...................................................................... 42

*Blanco v. Samuel*,
2022 WL 3139189 (August 5, 2022) ............................. 11, 15, 52

*Blanco v. Samuel*,
2022 WL 5241893 (October 6, 2022) ................................. 32, 34

*Bosarge v. U.S. Dept. of Educ.*,
5 F.3d 1414 (11th Cir. 1993) ............................................................ 8

*Bouchard v. Regional Governing Board of Region V Mental
Retardation Services*,
939 F.2d 1323 (8th Cir. 1991) ....................................................... 29

*Canizales v. Lawrence*,
2009 WL 10719452 (S.D. Tex.) ................................. 18, 19, 42, 45

*Chao v. Jasmine Hall Care Homes, Inc.*,
2007 WL 4591438 (E.D. Cal.) ....................................................... 24

*Crmsuite Corp. v. Gen. Motors Co.*,
2021 WL 914170 (M.D. Fla. Mar. 10, 2021) ............................. 36

*Dos Santos v. United States Attorney Gen.*,
982 F.3d 1315 (11th Cir. 2020) ...................................................... 35

*Encino Motorcars, LLC v. Navarro*,
138 S. Ct. 1134 (2018) ................................................................... 52

*Fidelity Watkins v. City of Montgomery*,
775 F.3d 1280 (11th Cir. 2014) ...................................................... 10

v

PAGE(S)

*Fox v. Standard Oil Co. of New Jersey*,
   294 U.S. 87 (1935) (Cardozo, J.) ............................................. 11

*Glob. Green, Inc. v. S.E.C.*,
   631 Fed. Appx. 868 (11th Cir. 2015) ..................................... 42

*Halifax Paving, Inc. v. U.S. Fire Ins. Co.*,
   481 F. Supp. 2d 1331 (M.D. Fla. 2007) ................................... 36

*Jadael Inc. v. Elliott*,
   2007 WL 2480387 (M.D. Fla.) ............................................ 36

*Kefeenie v. Gloria Martin Tr.*,
   2018 WL 4301558 (S.D. Fla.) ............................................ 12

*Kisor v. Wilkie*,
   139 S. Ct. 2400 (2019) .................................................. 43

*Lamonica v. Safe Hurricane Shutters, Inc.*,
   711 F.3d 1299 (11th Cir. 2013) .......................................... 46

*Mann v. Taser Intern., Inc.*,
   588 F.3d 1291 (11th Cir. 2009) ...................................... 9, 34

*Menuel v. City of Atlanta*,
   25 F.3d 990 (11th Cir. 1994) ............................................. 9

*Meyer v. Berkshire Life Ins. Co.*,
   372 F.3d 261 (4th Cir. 2004) ............................................. 9

*Norelus v. Denny's, Inc.*,
   628 F.3d 1270 (11th Cir. 2010) .......................................... 46

*Pugliese v. Pukka Dev., Inc.*,
   550 F.3d 1299 (11th Cir. 2008) .......................................... 41

*Quintero v. Lopez*,
   2016 WL 7508264 (S.D. Fla.) ............................................ 12

*Romero v. Diaz-Fox*,
   2021 WL 3619677 (S.D. Fla.) ............................................ 12

*Scantland v. Jeffry Knight, Inc.*,
   721 F.3d 1308 (11th Cir. 2013) .......................................... 52

vi

PAGE(S)

*Skidmore v. Swift & Co.*,
   323 U.S. 134 (1944) ....................................................... 41

*Thomas Jefferson Univ. v. Shalala*,
   512 U.S. 504 (1994) ...................................................... 42

*United States v. Colston*,
   4 F.4th 1179 (11th Cir. 2021) .................................... 37

*United States v. One Heckler-Koch Rifle*,
   629 F.2d 1250 (7th Cir. 1980) .................................... 35

*United States v. Sabhnani*,
   599 F.3d 215 (2d Cir. 2010) .............................. *passim*

*Valle v. Ceres Envtl. Services, Inc.*,
   2022 WL 1667015 (11th Cir. May 25, 2022) ............ 48

*Wiggins Bros., Inc. v. Department of Energy*,
   667 F.2d 77 (Temp. Emer. Ct. App. 1981) ................ 10

*Williamson Oil Co. v. Philip Morris USA*,
   346 F.3d 1287 (11th Cir. 2003) .................................. 51

**Statutes**

18 U.S.C. § 1593(b)(3) ................................................ 27

28 U.S.C. § 1291 ........................................................... 1

28 U.S.C. § 1331 ........................................................... 1

29 U.S.C. § 13(b)(21) ......................................... 1, 13, 18

29 U.S.C. § 23(b)(21) .................................................. 27

29 U.S.C. § 201 et seq., Fair Labor Standards Act ("FLSA") .......... *passim*

29 U.S.C. § 203(d) ...................................................... 52

29 U.S.C. § 213(b)(2) .................................................. 25

29 U.S.C. § 213(b)(21) ......................................... *passim*

**Rules**

Fed. R. Civ. P. 56 ....................................................... 34

PAGE(S)

Fed. R. Civ. P. 56(f)(1) ....................................................... 8

Local Rule 56.1 ......................................................... 32, 34

Local Rule 56.1(c) (S.D. Fla.) ............................................ 34

## Regulations

29 C.F.R. Part 531 ......................................................... 28

29 C.F.R. Part 552 *Application of the Fair Labor Standards Act to
Domestic Service* ................................................... 16, 41

29 C.F.R. § 552.102 ................................................. *passim*

29 C.F.R. § 552.102(a) ..................................................... 15

29 C.F.R. § 552.109(a) ..................................................... 45

29 C.F.R. § 785.1 .......................................................... 16

29 C.F.R. § 785.2 .......................................................... 16

29 C.F.R. § 785.15 ..................................................... 16, 41

29 C.F.R. § 785.21 ..................................................... 16, 41

29 C.F.R. § 785.22 ......................................................... 22

29 C.F.R. § 785.23 .................................................. *passim*

29 C.F.R. § 791.2 ...................................................... 47, 48

29 C.F.R. § 791.2(a)(1) ..................................................... 48

85 Fed. Reg. 2858 ..................................................... 48, 49

85 Fed. Reg. 2859 ..................................................... 48, 49

*Application of the Fair Labor Standards Act to Domestic Service*, 78
Fed. Reg. 60454-01, 2013 WL 5428279 (October 1, 2013)
("2013 Final Rule") ................................................ *passim*

*Joint Employer Status Under the Fair Labor Standards Act*, 85 Fed.
Reg. 2820-01, 2020 WL 225175 (January 16, 2020) .................... 47

PAGE(S)

*Rescission of Joint Employer Status Under the Fair Labor Standards Act Rule*, 86 Fed. Reg. 40939-01, 2021 WL 3207510 (July 30, 2021)................................................................... 47

*Rescission of Joint Employer Status Under the Fair Labor Standards Act Rule: Delay of Effective Date*, 86 Fed. Reg. 52412-01, 2021 WL 4263287 (September 21, 2021)....................................... 48

**Congressional Materials**

S. Rep. No. 93-690, Fair Labor Standards Amendments of 1974 (1974)................................................................ 19, 20

**Other Authorities**

Administrator's Interpretation No. 2014-1 .......................... 11, 12, 31

Brief of Plaintiff-Appellee, *Dep't of Labor v. Jasmine Hall Care Homes*, No. 08-15223, 2008 WL 5010952 (9th Cir. September 25, 2008) ................................................................. 24

DOL Field Assistance Bulletin No. 2016-1, *Exclusion of Sleep Time from Hours Worked by Domestic Service Employees* .............. 13, 22

DOL Field Operations Handbook § 25n02................................... 17

DOL Field Operations Handbook § 25n06(e)(2)(b) ......................... 28

DOL Field Operations Handbook § 31b20............................... 13, 17

DOL Interpretive Bulletin No. 13, *Determination of Hours for Which Employees are Entitled to Compensation under the Fair Labor Standards Act of 1938*....................................................... 19

DOL WHD Fact Sheet #79B ......................................... 13, 20, 31

DOL WHD Fact Sheet #79D: *Hours Worked Applicable to Domestic Service Employment Under the Fair Labor Standards Act (FLSA)* ................................................................. 21, 30

Domestic Service Final Rule Frequently Asked Questions (FAQs) ........ 14

*Dupont v. Smiley*, No. 16-1189, 585 U.S. ___ (June 28, 2018), *cert. denied* (Statement of Gorsuch, J.)................................................ 43

PAGE(S)

Deborah Thompson Eisenberg, *Regulation by Amicus: The Department of Labor's Policy Making in the Courts*, 65 Fla. L. Rev. 1223 (2013) .......................................................... 44

*Hours Worked in Residential Care (Group Home) Establishments— Sleep Time and Related Issues—Enforcement Policy*, 1988 WL 614199 ................................................................ 18

Kevin M. Stack, *Preambles As Guidance*, 84 Geo. Wash. L. Rev. 1252 (2016) .......................................................... 10

WHD Opinion Letter Fair Labor Standards Act (FLSA), 1981 WL 179033 ................................................................ 18

## JURISDICTIONAL STATEMENT

The District Court's jurisdiction was predicated on 28 U.S.C. § 1331 as the Complaint alleged a claim arising under the Fair Labor Standards Act ("FLSA"), a federal statute.  This Court has jurisdiction to review the Final Order of the District Court entered on October 6, 2022 (DE 96) pursuant to 28 U.S.C. § 1291 based upon the Notice of Appeal filed on October 31, 2022 (DE 102).

## STATEMENT OF THE ISSUES

I.    Does working and sleeping on the employer's premises six days and five consecutive nights satisfy the requirements for "residing" on the premises "for extended periods of time" for the purposes of the overtime exemption for live-in domestic workers under 29 U.S.C. § 13(b)(21)?

II.   Was summary judgment properly granted based on Blanco's admissions regarding her sleep time at the residence?

III.  Were there disputed material facts that precluded summary judgment on the issue of whether either Parent was Blanco's employer?

## SUMMARY OF THE ARGUMENT

The FLSA exempts from overtime (1) any employee who is employed in domestic service, (2) in a household, and (3) who resides in such household. 29 U.S.C. § 213(b)(21). Department of Labor ("DOL") regulations and interpretive guidance explain that the Live-in domestic worker exemption applies not only when

an employee resides on the employer's premises "permanently," but also when the employee resides there "for extended periods of time." In turn, an employee is considered to reside on the premises for "extended periods of time" if the employee spends "five consecutive days or nights" "working and sleeping on the employer's premises." These elements have been fully satisfied.

In the DOL's published guidance, the requirement for "residing" on the premises for "extended periods of time" is a straightforward bright line test: "working and sleeping" on the employer's premises "five consecutive days or nights." The DOL has consistently repeated this bright line rule, with no additional requirements, in published DOL guidance.

Instead of following years of precedent, Blanco and the DOL (amicus curiae) invite this Court to retroactively fashion a "facts and circumstances" test to determine whether domestic employees reside on the employer's premises. The Court should decline the invitation. No court, and no DOL interpretive guidance, has suggested that the elements set forth in the 2013 Final Rule were "factors to consider." The District Court's ruling is in accord with the FLSA, the DOL's regulations and published guidance, and with judicial precedent.

Every authority relied upon by Blanco (and the DOL) is from the sleep time exclusion context. These authorities determine what time is included in hours worked (an issue not present here). They do not pertain specifically to domestic

workers, and they do not pertain to the elements required to establish the Live-in domestic worker exemption. This conflation of sleep time exclusion law with exemption law was critical to the District Court's rejection of Blanco's argument. Inexplicably, Blanco and the DOL fail to address it.

Deference to the DOL's position set forth in its amicus brief is unmerited because the DOL fails to address the central issue in this case and which was the basis of the District Court's decision -- whether sleep time exclusion rules should be grafted onto the requirements for the Live-in exemption. The DOL brief also fails to cite or analyze the adverse precedent which holds that sleep time exclusion rules found in the DOL's administrative guidance are not intended to create elements to the exemption.

In sum, the 2013 Final Rule means what it says. There are only three requirements for the Live-in domestic worker exemption, all of which are established in the record. There was no error: the District Court applied the long-standing test for the Live-in exemption and then relied on Blanco's testimony and numerous record admissions in granting summary judgment. Blanco cannot now evade those admissions to manufacture a dispute of material fact in an effort to overturn the District Court's ruling.

The District Court also ruled that there were sufficient facts in dispute to preclude summary judgment on the issue of whether the Parents were Blanco's

employer under the FLSA. The Parents supplied facts indicating that, for the vast majority of Blanco's employment, a nanny agency was actually Blanco's employer and supplied additional facts to establish that they were not Blanco's joint employers with the agency. The District Court concluded that, when read in the light most favorable to the nonmoving party, there were genuine issues of material fact as to this issue.

## STATEMENT OF THE CASE

### A. Factual Background

The Defendants/Appellees are Anand Samuel ("Mr. Samuel") and Dr. Lindsey Finch ("Dr. Finch") [collectively, the "Parents"]. Mr. Samuel is an investment analyst. [SA. 53-2, ¶ 2].[1] Dr. Finch, after graduating medical school in 2019, began working as an obstetrics and gynecology resident at Jackson Memorial Hospital. [SA. 53-2, ¶ 23]. In 2018, the Plaintiff/Appellant, Maria Blanco ("Blanco") began working part time as a nanny caring for the Parents' children. [SA. 53-2, ¶¶ 5, 33; A. 93-1, p. 13]. At the time Blanco worked in the Parents' household, the Parents had four daughters (born in 2014, 2015, 2017, and 2018) [SA. 53-2, ¶¶ 3-5, 33]. The youngest daughter was 5½ months old at the start of the relevant period. [A. 93-1, p. 48].

---

[1] Citations to Appellant's Appendix are styled "A."; citations to Appellees' Supplemental Appendix are styled "SA.".

### 1. Overtime exemption issue

On January 21, 2019, Blanco began working full time. [SA. 79, p. 4, ¶ 5D]. Blanco's new schedule involved her staying and sleeping at the Parents' residence five consecutive nights each week. Blanco's schedule was 10:00 a.m. Sunday to 9:00 a.m. Monday, and Monday through Thursday, 7:00 p.m. to 9:00. a.m. the next day, for a total of 79 hours per week. [Id., ¶ 5D]. This schedule continued from January 21, 2019, until August 13, 2020 [hereinafter the "Relevant Period"] when Blanco was terminated. [Id.]. Blanco was paid $880 per week ($45,760 per year) for the 79 hours she was on the premises. [Id., ¶¶ 5D and 5E]. The parties have stipulated to Blanco's work schedule and pay. [Id.]. After each shift, Blanco was off the clock and left the residence. [SA 79, p. 4, ¶ 5G]. She claims that she stayed with her aunt, in North Miami. [A. 93-1, pp. 73, 143].

Blanco repeatedly affirmed that she slept each night, although she claims that she studied English during some portions of the evening. [A. 93-1, pp. 42, 70]. Blanco stated that she never complained to anyone of a lack of sleep and that one of the things she was hired for was to sleep with and tend to the children. [A. 59, ¶ 115].

In addition, as the District Court noted, during oral argument in connection with a discovery dispute, Blanco's attorney underscored that Blanco slept every night she was on the premises and affirmed that Blanco "would typically in the evenings sleep in the same bedroom as the minor children," that Blanco's job was

"to basically sleep with [the children] in the room" and that "Blanco was supposed to be sleeping unless the kids woke up" for some reason. [A. 43-14, pp. 8-10].

### 2. *Statutory employer issue*

The parties dispute whether the Parents were Blanco's employer. Blanco contends that Amazing Gracie, LLC, the entity which both sides agree issued her paychecks,[2] was simply a "front" through which the Parents controlled all aspects of her employment. [A. 47, ¶¶ 1-2, 75.]. Blanco contends that Dr. Finch directed Grace Trask, the daytime nanny who started in 2018, to create the LLC through which the nannies and housekeepers would be paid. [A. 47, ¶¶ 61, 64]. Amazing Gracie's only income came from Dr. Finch as the Parents were the company's only client. [A. 47 ¶¶ 66, 68]. Blanco claims that Trask had no authority to hire or fire and was simply a regular nanny along with Blanco and the other staff. [A. 47, ¶ 76]. But Blanco admits that it was Trask who fired her. [A. 93-1, pp. 45, 86-87].

The Parents maintain that they did not control Blanco's work schedule, had no input as to how money was apportioned among the staff, and had no authority over the agency's personnel policies and decisions. (SA. 53-2 ¶ 13; SA. 53-3 ¶ 18-26; A. 60-5, pp. 42-44]. Dr. Finch testified that she simply paid Amazing Gracie one lump sum for

---

[2] For eight weeks in early 2019, Dr. Finch paid Blanco and the other nannies directly, by way of a personal check, using a payroll company, NannyChex, LLC. NannyChex made income and payroll tax withholdings, made payments to the taxing authorities, and issued W-2 forms. [SA 53-3, ¶ 26; A. 59, ¶ 101].

all services provided. [SA. 53-3, ¶ 26]. Trask testified that the idea to create Amazing Gracie came from Trask's aunt, not from Dr. Finch. [A. 93-4, pp. 20, 103; SA. 53-3, ¶ 25-29, 55]. Dr. Finch testified that she compensated Amazing Gracie for Trask's processing the nannies' payroll and directing the entirety of the nanny operation. [A. 93-4, pp. 20, 103; SA. 53-3, ¶ 55]. Blanco disputes this, insisting that Trask was never compensated for these undertakings. [A. 47, ¶ 67]. [Id.]. Blanco also contends that Trask did not decide how much to pay her, or the other nannies, and that Trask was never given the authority to direct any of Blanco's work. [A. 47, ¶ 70].

Dr. Finch maintains that she was careful to do everything above board. No under-the-table payments were made. [SA. 53-3, ¶ 17]. A payroll processing company was used to make required federal income and payroll tax withholdings. Dr. Finch wanted to use an agency to deal with tax withholdings and other compliance matters and did not have time to manage the nannies. [Id.].

## B. Procedural History

Shortly after her termination, Blanco filed suit alleging she was owed unpaid overtime. The Parents contend that Blanco is a "live-in domestic service employee" who "resides" for "extended periods of time" in the household where she is employed and, therefore, is exempt from overtime pursuant to 29 U.S.C. § 213(b)(21) and 29 C.F.R. § 552.102 [hereinafter the "Live-in domestic worker exemption" or "Live-in exemption"].

7

Blanco moved for partial summary judgment on several grounds. Among other things, Blanco sought a ruling that, as a matter of law (a) the Live-in domestic worker exemption was inapplicable, and (b) both Parents were Blanco's employer. [A. 45, p. 1]. Based on representations made in Blanco's Summary Judgment Motion and in her Statement of Material Facts, the Parents requested judgment pursuant to Fed. R. Civ. P. 56(f)(1) (i.e., summary judgment for the nonmoving party) contending that Blanco was exempt as a Live-in domestic worker. [A. 52, pp. 7-8].

The District Court issued an Order denying Blanco's summary judgment motion and indicating that it was considering entering summary judgment against Blanco based on the exemption. [A. 82]. The District Court set a hearing to allow Blanco to explain why, based on the facts presented, the Court should not enter summary judgment in the Parents' favor. [Id.]. Following the hearing, the District Court issued a summary judgment order in the Parents' favor based on the Section 213(b)(21) exemption. [A. 95].

The District Court entered Final Judgment on October 31, 2022. [A. 96]. Blanco appealed the District Court's ruling to this Court. [D.E. 102].

### C. Standard of Review

1. A grant of summary judgment (or a denial of summary judgment when appealable) is reviewed de novo on appeal. *Bosarge v. U.S. Dept. of Educ.*, 5

F.3d 1414, 1417 (11th Cir. 1993); *Menuel v. City of Atlanta*, 25 F.3d 990, 994 (11th Cir. 1994).

2. Application of a district court local rule is subject to an abuse of discretion standard. *Mann v. Taser Intern., Inc*., 588 F.3d 1291, 1302 (11th Cir. 2009).

3. The standard of review for a district court's determination as to whether a particular statement constitutes a judicial admission is abuse of discretion. *Meyer v. Berkshire Life Ins. Co.*, 372 F.3d 261, 264 (4th Cir. 2004).

## <u>ARGUMENT AND CITATION TO AUTHORITIES</u>

### A. Blanco is Exempt from Overtime Pay Requirements Because She is a Nanny Who Resided at the Parents' Home for "Extended Periods of Time"

The Fair Labor Standards Act ("FLSA") provides an exemption from its overtime provisions for "any employee who is employed in domestic service in a household and who *resides in* such household." 29 U.S.C. § 213(b)(21) (emphasis added). To meet the requirements of the exemption, the employer must establish three elements: the Plaintiff must be employed (a) as a domestic employee, (b) in a household, (c) wherein the employee resides. In this case, the first two elements have been stipulated to. The only remaining issue is the definition of "reside" under 29 U.S.C. § 213(b)(21). Implementing regulations provide that "[a] live-in domestic service employee is one who resides in the household where they are employed." 29 C.F.R. § 552.102. The requirement to reside for extended periods of time, for this

9

purpose, is set forth in *Application of the Fair Labor Standards Act to Domestic Service*, 78 Fed. Reg. 60454-01, 2013 WL 5428279 (October 1, 2013) [hereinafter the "2013 Final Rule"]:[3]

> [E]mployees who work and sleep on the employer's premises for five days a week (120 hours or more) are considered to reside on the employer's premises for "extended periods of time." If less than 120 hours per week is spent working and sleeping on the employer's premises, *five consecutive days or nights* would also qualify as residing on the premises for extended periods of time.

78 Fed. Reg. at 60474 (citations omitted, emphasis added). The DOL stresses that it was stating, and not changing, existing law on this point. *See* 2013 Final Rule, 78 Fed. Reg. at 60474.[4]

Contrary to the DOL's published regulation, the DOL's brief argues (at p. 9) that "[n]either the act nor the Department's regulations explicitly define the term

---

[3] Relevant excepts reproduced at SA. Tab "A".

[4] Courts may look to a regulation's preamble to resolve ambiguity in the regulation. *E.g.*, *Fidelity Watkins v. City of Montgomery*, 775 F.3d 1280, 1284 (11th Cir. 2014); *Wiggins Bros., Inc. v. Department of Energy*, 667 F.2d 77, 88 (Temp. Emer. Ct. App. 1981) ("It is well settled … that the preamble to a regulation … should be considered in construing the regulation and determining the meaning of the regulation. In the construction of the Constitution of the United States, statutes and regulations, the federal rule permits and requires consideration of preambles in appropriate cases.") (citations omitted). *See also* Kevin M. Stack, *Preambles As Guidance*, 84 Geo. Wash. L. Rev. 1252, 1284 (2016) ("[A]s the agency's most carefully considered and vetted statements, preamble guidance is entitled to greater deference or weight than other forms of guidance."); *id.* at 1286 ("[P]reambles remain an agency's most deliberate and well-considered expressions of its view of its own regulations.").

'reside'." That is plainly wrong. The 2013 Final Rule refers to the above language as the "definition" of what "reside" means. *See* 2013 Final Rule, pp. 60473- 60474; *id.*, p. 60501 ("the Department defines a 'live-in' worker as one who resides on his or her employer's premises permanently or for an extended period of time (e.g., for at least five consecutive days or nights)"); *see also* Administrator's Interpretation No. 2014-1 [SA. 52-1] ("The [2013] Final Rule set out these definitions [of "reside"] but did nothing to alter them."). The 2013 Final Rule was a response by requests from the public for clarification of the definition of reside so that "households and workers clearly understand when overtime must be paid." 78 Fed. Reg. at 60473-60474.[5]

---

[5] The District Court concluded that because the agency's own rules supplied the definition of "reside", that definition would control over inconsistent definitions found in the dictionary or common usage. *See Blanco v. Samuel*, 2022 WL 3139189, at *3-4. *See e.g.*, *Alaska Trojan P'ship v. Gutierrez*, 425 F.3d 620, 628 (9th Cir. 2005) ("When a statute or regulation defines a term, that definition controls, and the court need not look to the dictionary or common usage.").

Numerous definitions of the term "reside" or "residence" can be found in the various regulations. The definition differs for purposes of, for example, immigration law, income tax law, estate tax law, and federal diversity jurisdiction. State probate law defines the term "reside" and the legal definition differs among the states. The same is true for state residency requirements for public college tuition. In none of these contexts would it be appropriate to ignore the peculiar definitions of the specific law and rely on the common usage or a dictionary definition of the term. *See Fox v. Standard Oil Co. of New Jersey*, 294 U.S. 87, 96 (1935) ("[D]efinition by the average man or even by the ordinary dictionary with its studied enumeration of subtle shades of meaning is not a substitute for the definition set before us by the lawmakers with instructions to apply it to the exclusion of all others.") (Cardozo, J.).

The 2013 Final Rule is an exhaustive exegesis on the application of the FLSA to domestic service employees.  The Final Rule does not, as suggested by Blanco (at p. 25), leave out the details.  Federal courts have relied upon the above-stated definition of "reside" and cite the 2013 Final Rule as authoritative. *E.g.*, *Kefeenie v. Gloria Martin Tr.*, 2018 WL 4301558, at *8 (S.D. Fla.); *Quintero v. Lopez*, 2016 WL 7508264, at *6 (S.D. Fla.); *Romero v. Diaz-Fox*, 2021 WL 3619677, at *5 (S.D. Fla.).

This definition of "reside" in the 2013 Final Rule -- working and sleeping five consecutive days or nights -- is repeated in DOL interpretive guidance without supplemental requirements:

1.    **Administrator's Interpretation No. 2014-1** [SA. 52-1] "For this purpose, "reside" means to live in the home on … for 'extended periods of time,' i.e., to work and sleep there for … five consecutive days or nights (regardless of the total number of hours." (citing 78 Fed. Reg. at 60,474); *See also id.*, n.18 ("For example, a provider who spends Sunday through Thursday nights in the consumer's home but spends the weekend at the home of a family member where she has a bedroom does not live permanently with the consumer but does, because she sleeps at the consumer's home for five consecutive nights each week, lives with the consumer for extended periods of time.").

12

2.    **DOL Field Assistance Bulletin No. 2016-1** [A. Tab "D"] ("An employee is deemed to reside at her worksite if she lives there … for 'extended periods of time,' i.e., works and sleeps there … five consecutive days or nights (regardless of the total number of hours) (citations omitted).

3.    **DOL's Field Operations Handbook Chapter 25, § 25n02(c)(2)** (entitled Live-in domestic service employees: section 13(b)(21)) [SA. Tab "D"]. ("If an employee spends less than 120 hours per week working and sleeping on the employer's premises, but works 5 consecutive days or nights, this situation would also qualify as residing on the employer's premises for extended periods of time.").

4.    **DOL Field Operations Handbook ("FOH") § 31b20** (entitled Employees residing on the employer's premises for 5 days a week.) ("Where less than 120 hours in a week are spent residing on the employer's premises, 5 consecutive days or nights would also qualify as residing on the premises 'for extended periods of time.'"

5.    **DOL WHD Fact Sheet #79B**, entitled Live-in Domestic Service Workers under the Fair Labor Standards Act (FLSA) [A. Tab "B"] ("If a domestic worker spends less than 120 hours per week working and sleeping on the employer's premises, but spends five consecutive days or nights residing on the premises, this also constitutes an extended period of time.").

6.    **Domestic Service Final Rule Frequently Asked Questions (FAQs)**
[SA. Tab "E"]. ("Employees who work and sleep on the employer's premises for five consecutive days or nights each week would also qualify as residing on the premises for 'extended periods of time' even if they do not work 120 or more hours each week.")

The District Court's ruling is in accord with the FLSA, the DOL's regulations and published guidance, and all judicial precedent. The court correctly found that Blanco was an exempt Live-in domestic worker because she resided in her employer's household for an extended period of time by working and sleeping in the household for five consecutive nights. In rejecting Blanco's contrary argument, the court reasoned as follows:

> Blanco has conflated two different, albeit related, issues under the FLSA: (1) whether time spent sleeping can, by agreement, be excluded from the number of hours worked for purposes of calculating an employee's minimum wage and overtime compensation, under 29 C.F.R. § 785.23—not at issue in this case—versus (2) whether the employee is exempt from the FLSA's overtime provisions, under 29 U.S.C. § 213(b)(21) and 29 C.F.R. § 552.102(a). That is, Blanco has improperly imposed the requirements for excluding sleeping time or time during which an employee has freedom from all work obligations onto the separate question—and the question at issue in this case—of whether an employee qualifies as exempt from overtime. In sum, Blanco's reliance on precedent and regulatory language dealing with the exclusion of sleep-time, or truly personal-time, from determining an employee's total compensable hours, is misplaced. None of those cases or regulations offers guidance on determining whether a domestic service employee is exempt from overtime under the FLSA.

*Blanco v. Samuel*, 2022 WL 3139189, at *5 (citing *United States v. Sabhnani*, 599 F.3d 215, 257 (2d Cir. 2010)).   Blanco (and the DOL) now present this same stratagem–which the District Court specifically rejected–and ask this Court to graft, for the first time, the sleep time exclusion law on to the requirements for the Live-in domestic worker exemption.  Both Blanco and the DOL ignore relevant regulatory language and administrative guidance, as well as court precedent.

### 1.   *Blanco's reliance on sleep time exclusion rules is misplaced*

Neither Blanco nor the DOL dispute that all three requirements for the live exemption as described above are met.  Instead, Blanco contends that, as to the third element, the 2013 Final Rule and related administrative guidance do not mean what those promulgations plainly say.   As the District Court stated, this effort to essentially amend the existing rule is accomplished by conflating two bodies of law. Blanco imports precedent and regulatory language and related authority from the sleep time exclusion context and misapplies that law in this exemption case.  This analytical error suffuses Blanco's (and the DOL's) entire brief as it pertains to the exemption issue.[6]

Every authority relied upon by Blanco and the DOL is from the sleep time exclusion context.   These authorities determine what time is included in hours

---

[6] For purposes herein, the first issue under 29 C.F.R. § 785.23 is termed the "sleep time exclusion" issue and the second issue under 29 U.S.C. § 213(b)(21) and 29 C.F.R. § 552.102(a) is termed the "exemption issue".

worked. They do not pertain specifically to domestic workers, and they do not pertain to the elements required to establish the Live-in domestic worker exemption. This conflation of sleep time exclusion law with exemption law was critical to the District Court's rejection of Blanco's argument. Inexplicably, Blanco and the DOL fail to forthrightly address it.

1.    Sleep time exclusion regulations relied upon by Blanco and the DOL include 29 C.F.R. §§ 785.15, 785.21, and 785.23. Part 785 is entitled *Hours Worked*, and these are simply general interpretive regulations that pertain exclusively to calculating hours worked.[7] *See* 29 C.F.R. § 785.1 ("This Part [29 CFR Part 785] discusses the principles involved in determining what constitutes working time."). The requirements for the domestic service employee Live-in exemption are found in 29 C.F.R. Part 552 *Application of the Fair Labor Standards Act to Domestic Service.*

2.    Blanco and the DOL to a great extent rely on 29 C.F.R. § 785.23. Again, that regulation pertains exclusively to the calculation of hours worked, not the criteria for the Live-in exemption or the definition of "reside." The regulation

---

[7] The regulations cited by DOL are part of DOL's interpretative guidance published in the Code of Federal Regulations. As the interpretative regulations note, "[t]he ultimate decisions on interpretations of the act are made by the courts." 29 C.F.R. § 785.2. The general interpretative regulations cannot supersede or amend the statutory regulation, 29 C.F.R. § 552.102, promulgated in accordance with the Administrative Procedure Act under the FLSA, 29 U.S.C. § 213(b)(21), implementing that "[a] live-in domestic service employee is one who resides in the household where they are employed."

does not pertain specifically to the statutory exemption for domestic service employees as the examples used indicate. But the regulation indirectly casts light on the meaning of "reside."

In any court precedent or administrative guidance where an employee's sleep time is excluded from hours worked under 29 C.F.R. § 785.23, it necessarily follows that the employee resides on the employer's premises. By its terms, 29 C.F.R. § 785.23 applies only to "an employee who resides on his employer's premises on a permanent basis or for extended periods of time." The employee may not necessarily be overtime exempt (only domestic service employees can be exempt under 29 U.S.C. § 213(b)(21)). But such cases and examples in the administrative guidance show what constitutes "residing" on the employer's premises. This logic works in one direction only. It may not be possible to exclude any sleep time for an exempt live-in employee, e.g., where there is no agreement, no private quarters, no homelike environment, too many sleep interruptions, third-party payor, etc. Stated simply, if one is asking whether sleep time can be excluded under Section 785.23, one has conceded that the employee resides on the employer's premises. Blanco and the DOL have the logic reversed.

3.    Blanco and the DOL rely upon DOL Field Operations Handbook, Section 31b20.  That provision is taken from Chapter 31 entitled "Hours Worked." It is the wrong section.  Section 25n02 entitled *Live-in domestic service employees:*

*section 13(b)(21)* deals with the Live-in domestic worker exemption. [SA. Tab "D"]. That said, the definition of what "reside" means is the same under both rules: A worker resides on the employer's premises for an extended period of time if he or she works and sleeps on the employer's premises five consecutive days or nights.

4.    Blanco and the DOL rely upon WHD Opinion Letter Fair Labor Standards Act (FLSA), 1981 WL 179033.[8]  That Opinion Letter pertains to "the circumstances under which an employer can deduct from hours worked the time spent by house-parents sleeping at privately-operated community residences for the mentally retarded."  The Opinion Letter does not pertain to domestic service employees or the Live-in exemption.  Two courts have so held. *See United States v. Sabhnani*, 599 F.3d 215, 256-257 (2d Cir. 2010) ("Nothing about the FLSA Opinion Letter … suggests that it was an interpretation of what it means to "reside in [a] household" for purposes of § 213(b)(21)); *Canizales v. Lawrence*, 2009 WL 10719452, at *17 (S.D. Tex.) (The DOL's 1981 Opinion Letter and the 1988 Enforcement Policy (discussed next) "were not issued for guidance on determining whether an employee is exempt under the FLSA.").

5.    Blanco and the DOL rely upon a 1988 Enforcement Policy, 1988 WL 614199.  The promulgation is entitled *Hours Worked in Residential Care (Group*

---

[8] Contrary to the DOL's contention, the 1981 Opinion Letter contemplates that live-in employees shall leave the premises during the day.

*Home) Establishments -- Sleep Time and Related Issues -- Enforcement Policy.* Like the 1981 Opinion Letter, the 1988 Enforcement Policy does not pertain to the Live-in exemption.[9] *See Canizales*, 2009 WL 10719452, at *17 (1988 Enforcement Policy inapplicable to Live-in exemption).

6.    The DOL relies upon Interpretive Bulletin No. 13, *Determination of Hours for Which Employees are Entitled to Compensation under the Fair Labor Standards Act of 1938.* The Interpretive Bulletin addresses what activities constitute "work" and casts no light on the meaning of "reside" for purposes of the Live-in exemption. The revised version of 29 C.F.R. § 785.23 omits the "normal night of sleep language" the DOL points to (at pp. 23-13, 18).

7.    The DOL (at pp. 10-11) relies upon language in Senate Rep. No. 93-690, Fair Labor Standards Amendments of 1974 (1974), pp. 20-21. The DOL quotes the Report: "[O]rdinarily such an employee engages in normal private pursuits such as eating sleeping and entertaining and has other periods of complete freedom." The DOL omits the preceding sentence from the Senate Report which makes clear that the context is hours worked: "In cases in which the domestic service employee

---

[9] Notably, the promulgation discusses an employee who is on duty and compensated from 6:00 a.m. to 9:00 a.m., and from 5:00 p.m. to 10:00 p.m., Monday through Friday, and who sleeps Monday through Thursday nights on the premises. The employee is off duty 9:00 a.m. to 5:00 p.m. each weekday. This schedule parallels Blanco's schedule (40 hours of weekday off duty time; 5 nights slept over; work time before and after sleep). The employee nonetheless meets the definition of "residing on the premises for an extended period of time."

19

resided on the employer's premises, the specific provision of the Secretary's interpretative bulletin relating to hours worked by such an employee would be applicable (see 29 CFR 785.23)."

8.     The DOL relies upon *Fact Sheet #79B: Live-in Domestic Service Workers Under the Fair Labor Standards Act (FLSA)* [A. Tab "B"].  Fact Sheet #79B addresses, in separate portions of the Fact Sheet, both issues: (1) the requirements for the exemption, and (2) in which situations sleep and other personal time can be excluded from hours worked.  Regarding the Live-in domestic worker exemption, the Fact Sheet articulates the position advanced by the Parents here: A domestic worker resides on the employer's premises for an extended period of time when he or she works and sleeps on the employer's premises five consecutive days or nights.

9.     The DOL relies upon 29 C.F.R. § 552.102 entitled *Live-in Domestic Service Employees*. [SA. Tab "C"].  The DOL argues that the regulation explicitly references Section 785.23 but fails to state that it does so only in reference to determining the number of hours worked by a live-in domestic worker.  For employees who reside on the employer's premises, Section 785.23 imposes requirements before the employer can exclude certain portions of time from hours worked.  But again, the DOL's logic is inverted.  As formulated by the regulation's drafters, these considerations are relevant only if it is determined that the employee

resides on the employer's premises. Otherwise, the phrase in Section 552.102 "in determining the number of hours worked by a live-in worker" would be surplusage.

10. Blanco relies on DOL WHD *Fact Sheet #79D: Hours Worked Applicable to Domestic Service Employment Under the Fair Labor Standards Act (FLSA)* [A. Tab "C"]. As its title suggests, Fact Sheet # 79D pertains to hours worked, not the Live-in exemption. The Fact Sheet undermines Blanco's argument.

Blanco (at p. 30) points to the example of "a nanny who must watch over her charge even when she is sleeping, and [the DOL] deems the time sleeping as compensable work time." The word "sleeping" refers to the sleep of the charge, not the nanny. More importantly, the Fact Sheet mentions Wendy, a live-in domestic service worker who leaves her employer's home each weekday from 9:00 a.m. to 4:00 p.m. to work at another job. Wendy's job was to get her employer ready for bed after he returned from work and then to assist him in getting ready for work in the morning. Wendy was free from duty when her employer was at work, and she was not on the employer's premises during that time. Again, this fact pattern closely matches Blanco's situation in that Blanco put the Parents' children to bed, then slept on the premises, and arose to prepare them for school in the morning, and she was not on the premises while they were in school. What is important is that the DOL regards Wendy as a "live-in domestic worker" despite her having a work schedule similar to that of Blanco.

11.    Blanco relies upon DOL Field Assistance Bulletin No. 2016-1, entitled *Exclusion of Sleep Time from Hours Worked by Domestic Service Employees*. [A. Tab "D"].  The Bulletin uses the same definition of "reside" as the 2013 Final Rule. FAB 2016-1 provides that "[e]mployers of live-in employees, including live-in domestic service employees, may exclude sleep time from those employees' hours worked provided certain conditions are met: (1) the employer and employee have a reasonable agreement to exclude sleep time, 29 C.F.R. 785.23, and (2) the employer provides the employee "private quarters in a homelike environment."

FAB 2016-1 mentions live-in workers who share a bedroom.  Blanco argues that FAB 2016-1 preconditions the Live-in exemption on receiving an uninterrupted night's sleep.  The requirement for uninterrupted sleep pertains to 29 C.F.R. § 785.22 (applicable to shifts of more than 24 hours), and only in the context of sleep time exclusion.  If sleep interruptions defeated the Live-in exemption, it would be impossible to maintain a defense under Section 213(b)(21) unless the nanny were under constant surveillance while sleeping.  The FLSA does not contemplate such a requirement and Blanco's position is absurd.

The chart on page 7 of FAB 2016-1 (below) embodies the correct logic.  The chart starts with the premise that the employee is "live-in" and then outlines the requirements for sleep time exclusion from hours worked.

22

| | Live-in employee | | Shifts of 24 hours or more | Shifts of fewer than 24 hours |
| | Extended periods of time | Permanent | | |
|---|---|---|---|---|
| **Requirements for excluding an employee's sleep time from hours worked** | • Reasonable agreement to exclude sleep time<br>• Employer must provide private quarters in a homelike environment | | • Employer provides adequate sleeping facilities<br>• Employee can usually enjoy an uninterrupted night's sleep (5 consecutive hours)<br>• Express or implied agreement to exclude sleep time | Sleep time may not be excluded |
| **Maximum number of hours that can be excluded** | Up to 8 hours per night as long as the employee is paid for at least 8 hours during the 24-hour period | Up to 8 hours per night as long as the employee is paid for some other hours during the workweek | Up to 8 hours, in a fixed period, in each 24-hour shift | Sleep time may not be excluded |
| **Limitations on exclusion on a particular night** | • Any interruption to sleep time must be paid<br>• If during any night the employee does not get reasonable periods of uninterrupted sleep totaling at least 5 hours, the employer may not exclude any sleep time | | | |

Live-in domestic service employees may exclude sleep time, but only if the employee (a) is provided private quarters, and (b) has periods of uninterrupted sleep aggregating to 5 hours each night. But failure to provide private quarters, or a lack of uninterrupted sleep, means only that the employee must be paid for that sleep time. It does not require the employee to be deemed something other than a live-in

employee.  Otherwise, the chart makes no sense.  Blanco's (and the DOL's) theory cannot be squared with the language and structure of FAB 2016-1.

13.    Blanco relies on the district court's decision in *Chao v. Jasmine Hall Care Homes, Inc.*, 2007 WL 4591438 (E.D. Cal.).  That case, although using the word "exemption", is referring to the Section 785.23 "exclusion" of hours worked.  *Jasmine Hall* is a sleep time exclusion case and does not address the Live-in exemption.

14.    The DOL (at page 14) relies upon its own brief filed in a 2008 case, wherein the DOL argued that Section 785.23 is available only where the employer provides a "home like environment with private quarters which includes bedrooms separate from coworkers and residents."[10]  The brief (and the case), pertains to hours worked in a residential care facility (and hence could not pertain to the Live-in exemption for domestic service workers).  Footnote 9 to the DOL's brief makes the very point urged here: "The existence of an agreement [to exclude sleep time] and its reasonableness are only relevant if section 785.23 applies in the first place. For section 785.23 to apply, the employee must "reside" on the employer's premises.").  Section 785.23 by its terms applies only to employees residing on employer's

---

[10] Brief of Plaintiff-Appellee*, Dep't of Labor v. Jasmine Hall Care Homes*, No. 08-15223, 2008 WL 5010952 (9th Cir. September 25, 2008).

premises.  Thus, to argue that Section 785.23 is relevant is to concede that the employee resides on the employer's premises.

In sum, every authority relied upon by Blanco and the DOL is from the sleep time exclusion context.  In significant part, that was why the District Court rejected Blanco's argument.  Inexplicably, neither Blanco nor the DOL take up the issue of why this Court should, for the first time and in opposition to all existing precedent, implant the sleep time exclusion rules onto the Live-in domestic employee exemption.

### 2. There is no authority for a "facts and circumstances" test for the Live-in domestic service employee exemption

As the District Court correctly held, the requirement under 29 C.F.R. § 552.102 for "residing" on the premises for "extended periods of time" is a "straightforward" bright line test: "working and sleeping" on the premises "five consecutive days or nights." This bright line test, with no additional requirements, is consistently and unambiguously repeated in varied DOL guidance.

Blanco (at p. 23, n.5) and the DOL (at p. 16) urge this Court to judicially legislate a "facts and circumstances" test to determine whether a domestic employee resides on the employer's premises.  The DOL argues that whether an employee "resides" on the premises within the meaning of the Live-in exemption depends on multiple facts, such as:

1.    "time spent on the employer's premises",

2.     having "both on- and off-duty time," and

3.     having "appropriate space in which to spend off-duty time."

No court, and no DOL interpretive guidance, has suggested that the elements set forth in the 2013 Final Rule were "factors to consider" or that the test was a "facts and circumstances" test.  To the contrary, although the 2013 Final Rule described numerous other issues involving domestic service employees as being "fact sensitive," "fact specific," "subject to a multifactored analysis," or some similar formulation,[11] the 2013 Final Rule does not use similar language to describe the meaning of "reside".  No court has applied a "facts and circumstances" test to find the Live-in exemption inapplicable.  Blanco (and the DOL) are attempting to have this Court modify the law to require additional elements for the Live-in exemption.

A "facts and circumstances" test for who "resides" in an employer's home cannot be reconciled with the Second Circuit's decision in *United States v. Sabhnani*, 599 F.3d 215, 256 (2d Cir. 2010).  In *Sabhnani*, the employer was convicted of holding two persons – Samirah and Enung – in peonage.  The employees had to eat

---

[11] The 2013 Final Rule describes the following issues, unlike the definition of "reside", as "fact sensitive" inquiries: (a) what constitutes a private home or residence (pp. 60461-60463, 60476); (b) what constitutes "companionship services" (p. 60469); (c) whether an agreement to exclude certain off-duty hours is reasonable (pp. 60474-60475, 60491); (d) whether shared living arrangements are covered by the FLSA (pp. 60476-60477); (e) whether a joint employment arrangement exists (pp. 60483-60484); (f) whether a domestic service worker is an independent contractor versus an employee (p. 60484); (f) whether a meal break is bona fide (p. 60492); and (g) whether off duty time is compensable (p. 60492).

from the garbage. They were physically assaulted, subjected to harsh punishment and abuse, and made to sleep on the floor outside a bedroom or in the bathroom. They were deprived of sleep and punished for falling asleep.

In *Sabhnani*, to determine restitution, it was necessary to determine whether the overtime exemption under Section 213(b)(21) was applicable.[12] Just like Blanco and the DOL do here, the United States relied upon sleep time exclusion authority to defeat the exemption. The government argued that because the employer "failed to provide, among other things, appropriate living quarters, adequate sleeping facilities and adequate meals," the Section 23(b)(21) overtime exemption was inapplicable. *See* 599 F.3d at 255.

In rejecting that approach, the Second Circuit reversed the district court and held that the domestic workers were exempt under Section 213(b)(21). The court reasoned as follows:

> Nothing about the [1981 DOL] Opinion Letter, however, suggests that it was an interpretation of what it means to "reside in [a] household" for purposes of § 213(b)(21). … [The 1981 DOL Opinion Letter] does [not] purport to suggest, at least with regard to domestic service, that it is only when an employee has private quarters separate and apart from the area where he or she works that this employee should be regarded as residing at the employer's premises—a circumstance that, in any event, provides a somewhat arbitrary basis for distinguishing among domestic workers who live in their employers' homes and who argue

---

[12] The restitution statute – 18 U.S.C. § 1593(b)(3) – defines the "full amount of the victim's losses," in pertinent part, as "the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act (29 U.S.C. 201 et seq.)."

that they are entitled to overtime pay. The [1981 DOL] Opinion Letter thus gives us no cause to doubt our interpretation of § 213(b)(21). For the same reasons, we find the cases relied on by the government that apply the Opinion Letter (again to facts not similar to those in this case) inapposite.

*Sabhnani*, 599 F.3d at 257.

The *Sabhnani* Court concluded that the domestic servants were exempt under Section 213(b)(21) despite the court's agreement that "[a]t no time were Samirah and Enung afforded periods of complete freedom from all duties when the employee may either leave the premises or stay on the premises for purely personal pursuits" and despite the fact that they received only two hours sleep per night. 599 F.3d at 258. Simply put, if determining whether an employee resides on the employer's premises requires an examination of "all the relevant facts", *Sabhnani* would have gone the other way. It is hard to imagine a more deplorable "residence" than the one at issue in *Sabhnani*.[13]

Other DOL interpretive guidance is in accord. DOL Field Operations Handbook § 25n06(e)(2)(b) [SA. Tab "D"], pertains to the whether an employer can take credit for the lodging provided to an employee under 29 C.F.R. Part 531. It

---

[13] The District Court relied upon the Second Circuit's decision in *Sabhnani*. The DOL deals with *Sabhnani* by pretending it does not exist. Importantly, when the DOL revised the regulations in the 2013 Final Rule and decided not to narrow or alter the Live-in exemption, the DOL certainly was on notice of the ruling in *Sabhnani*, and the DOL accepted the Second Circuit's interpretation when the Department determined that the regulations should not be modified.

provides that "[i]f a live-in domestic service employee is only provided a cot or couch to sleep on in a living space shared with the employer, this fact would suggest that the live-in employee is not provided adequate off-duty time or is unable to use such time as he or she chooses and therefore that the lodging is primarily for the benefit of the employer [and hence no credit can be taken against wages for the value of the lodging]." Notably, the DOL still regards the employee as a "live-in domestic service employee."

### 3. *Daily off-premises activity does not defeat the Live-in exemption*

The DOL (at p. 21) describes Blanco's schedule as working five consecutive night shifts because she leaves the premises each day.  However, even where an employee is relieved of duty during the day and spends that time off premises, that does not mean that the employee does not reside on the premises. In *Bouchard v. Regional Governing Board of Region V Mental Retardation Services*, 939 F.2d 1323 (8th Cir. 1991), caregivers at a group home worked Monday through Thursday, from 3:30 to 10:00 p.m. each weekday plus Friday 6:00 a.m. to 8:00 a.m., and slept on premises 10:00 p.m. to 6:00 a.m. the next day.[14]  The Eighth Circuit rejected the argument that the employees worked a series of 16 or 17 hour shifts.  939 F.2d at 1330.  The employees were not domestic service employees and hence were not

---

[14] The work schedule is found in the dissenting opinion, 939 F.2d at 1339 n.7 (Lay, C.J., dissenting).

covered by the Live-in exemption.  But because only employees who reside on the employer's premises can have their sleep time excluded from hours worked under Section 785.23, the case affirms that employees can spend most daylight hours off premises while still residing on the employer's premises for extended periods of time.

Similarly, the 2013 Final Rule confirms that a live-in worker can leave the premises during the daytime: "For example, a live-in direct care worker who assists her roommate in the morning for three hours, then goes to class at the local university, … before assisting the roommate for two hours in the evening, has only worked five hours[.]" 78 Fed. Reg. at 60492.  A similar example is repeated in Factsheet #79D [A. Tab "C"], where a live in employee works off premises at a grocery store from 9:00 a.m. to 4:00 p.m.

In sum, Blanco's weekday off-premises, off-duty times, when the children were in school, do not vitiate the Live-in exemption.

### 4. *No separate rule for situations where sleep time is essential to the domestic worker's' job duties*

Blanco launches a variety of descriptors in an effort to rhetorically remove this case from the definition of "reside" contained in the 2013 Final Rule.  Blanco (at pp. 28, 31) maintains that "sleep is an integral part of [Blanco's] work" and that the rule does not apply to those who are "employed to sleep" or to a "shift" worker.  Neither Blanco nor the DOL cite any case law, or any DOL interpretive guidance, that would support the idea that "night shift workers" – however defined –, or

situations where sleep is an essential aspect of the job, are carved out from application of the rule.

### 5. *Sleep interruptions do not defeat the overtime exemption under Section 213(b)(21)*

In most contexts where an employee resides on the employer's premises, the employee is required to remain on site because it is anticipated that situations will arise which cannot be planned in advance where sleep time will be interrupted and the employee will be called to duty. *See e.g.*, Fact Sheet #79B [A. Tab "B"]. Administrator's Interpretation 2014-1 makes clear that even where a live-in provider's sole responsibility is to be "at the residence five nights a week from 10:00 p.m. to 8:00 a.m.", and where a college student is "required to sleep at the residence so [as to be] available if the consumer needs assistance during the night", she nonetheless "reside[s] on the employer's premises." [AS. 52-1].

The Court should reject these efforts to inject additional elements to the Live-in exemption beyond those required under the DOL's existing promulgations.

### 6. *The Live-in exemption does not require private quarters*

Roommates are expressly permitted under the 2013 Final Rule.  The word "roommate" appears 35 times in the text.  "Shared living arrangements may also be known as … paid roommate, housemate, and life sharing." 78 Fed. Reg. at 60485. Thus, not only housemates, but roommates who share a room can meet the requirements for the Live-in exemption.  However, for the exclusion of sleep time

(whether or not the Live-in exemption applies), the 2013 Final Rule says roommates must have "adequate sleeping facilities."

### 7. *Blanco cannot controvert her numerous admissions regarding her time sleeping at the Parents' residence*

Blanco argues that disputes of material fact preclude summary judgment on the Live-in exemption issue. As stated, the only element of the exemption not stipulated to is whether Blanco resided at the Parents' residence for "extended periods of time." That turns on whether Blanco worked and slept on the premises for five consecutive days or nights.

Blanco complains (at pp. 32-33 & nn.15,16) that the District Court "ignored" her testimony that "qualified" her sleep time. To the contrary, the District Court describes Blanco's testimony in detail in its Order Entering Summary Judgment. *Blanco v. Samuel*, 2022 WL 5241893, at *2-3. In essence, Blanco argues that because her sleep was low quality, it therefore should not count. The court was unmoved.

As noted by the District Court, Blanco repeatedly admitted that she slept during her nights at the Parents' residence. These admissions are abundant, and in various contexts. Blanco (at pp. 25-26, nn. 7,8) characterizes it as an issue of judicial admission. Blanco's problem goes beyond judicial admission and involves application of Local Rule 56.1 (S.D. Fla.).

*a. Blanco's Statement of Material Facts*

In her Statement of Material Facts filed with her Motion for Summary Judgment, Blanco made the following representations:

1. "During the night shift, the Plaintiff stayed in a room with the two youngest of the Defendants' children. Plaintiff always slept with the Defendants' 2 youngest daughters at the Froude home. At the Harbor House condo, Plaintiff slept in a room with all of the Defendants['] children." [A. 47, ¶ 7].

2. "Plaintiff's 'sleep time' with Defendants['] children is compensable time." [A. 47, ¶ 78].

Blanco made similar statements in her Reply Memorandum:

3. "Undisputed that Plaintiff never complained of lack of sleep as that was specifically one of the things she was hired for – to sleep with and tend to the Defendants children during the night shift." [A. 59, p. 7, ¶ 115].

Under the applicable local rule, all material facts in any party's Statement of Material Facts may be deemed admitted unless controverted by the other party's Statement of Material Facts, provided that: (i) the Court finds that the material fact at issue is supported by properly cited record evidence;[15] and (ii) any exception

---

[15] For this purpose, there is no requirement that the evidence be undisputed.

under Fed. R. Civ. P. 56 does not apply. L.R. 56.1(c) (S.D. Fla.).  Blanco's admissions that she slept at the Parents' residence are supported by abundant evidence in the record from Blanco and other witnesses.  Blanco's admissions in her deposition were identified by the District Court (and not repeated here), *see* 2022 WL 5241893, at *2.  Additional supporting record evidence includes testimony of the Parents and the two other nannies (Adrianna Gomez and Grace Trask). [SA. 53-1, ¶¶ 15, 16, 19, 20; SA. 53-2, ¶¶ 26, 27, 35, 38, 51, 78, 85; SA. 53-3, ¶¶ 28, 31; A. 93-4, pp. 42, 47-48, 101-102; A. 93-7, pp. 57, 59, 61, 77, 79, 82].  Accordingly, this case was properly resolved on summary judgment based on Blanco's own admissions, and those admissions are amply supported by record evidence.  The District Court, pursuant to Local Rule 56.1, had the authority to deem these facts admitted and to rely on them in entering summary judgment.[16]  Any inconsistent or countervailing statements made by Blanco in her deposition are irrelevant.

### b. Blanco's summary judgment and reply memoranda

Blanco's Brief in Support of Summary Judgment [A. 45] contains similar admissions:

---

[16] Application of a local rule is subject to an abuse of discretion standard. *Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1302 (11th Cir. 2009) (The Eleventh Circuit "give[s] great deference to a district court's interpretation of its local rules and review a district court's application of local rules for an abuse of discretion.") (citations and internal quotation omitted).

p. 2          "Plaintiff … always slept with the Defendants' daughters."

p. 7          "[T]he Plaintiff's night-shift job's essential requirements involved her sleeping in a bedroom with the Defendants two youngest daughters.  The Defendants claim that Plaintiff should not be paid for time sleeping with their children even though that was, per se, her most important job duty as a full time nanny."

Plaintiff's Reply Memorandum [A.58] contains similar admissions:

pp. 3-4       "[Blanco] was a night shift nanny whose job was specifically to sleep and tend to the children."

Litigants are generally bound by the admissions in their pleadings. *Dos Santos v. United States Attorney Gen.*, 982 F.3d 1315, 1319 (11th Cir. 2020); *see also United States v. One Heckler-Koch Rifle*, 629 F.2d 1250, 1253 (7th Cir. 1980) ("Admissions in a brief of the party opposing a motion for summary judgment are functionally equivalent to admissions on file and, as such, may be used in determining presence of a genuine issue of material fact.").  Again, any inconsistent statements made by Blanco in her deposition are insufficient to counter her subsequent written admissions.

### c.  Statements made in hearing on discovery motion

Finally, additional admissions were made during a discovery dispute hearing.

| The Court: | Your client, the Plaintiff, Ms. Blanco, would typically in the evenings sleep in the same bedroom with the minor children? |
|---|---|
| Mr. Zidell: | Yes.  At that time, the Defendants had four minor children. … [T]he Plaintiff slept with two of the four minor children in the second bedroom; |
| The Court: | … That was her job, to basically sleep with them in the room. Is that part of your theory? |
| Mr. Zidell: | That's certainly part of our theory. |

Hearing Transcript [A. 43-14, p. 9].  And again:

| The Court: | Was there anyone else home on this night shift or was it just your client, Ms. Blanco, and the children? |
|---|---|
| Mr. Zidell: | Well, the male Defendant, Mr. Samuel -- |
| The Court: | Yes. |
| | … |
| Mr. Zidell: | And he was sleeping in the bedroom that was about 15 to 20 feet or so away from where the Plaintiff slept with these two daughters, these two daughters that the Defendant had. |

[Id., p. 8].  An attorney's representations during oral argument are binding judicial admissions and may form the basis for deciding summary judgment.[17]  Litigants can be held to concessions or admissions of fact they make before a district court. *Estate of Amergi ex rel. Amergi v. Palestinian Auth.*, 611 F.3d 1350, 1359 (11th Cir. 2010).

---

[17] *E.g.*, *Halifax Paving, Inc. v. U.S. Fire Ins. Co.*, 481 F. Supp. 2d 1331, 1336 (M.D. Fla. 2007); *Jadael Inc. v. Elliott*, 2007 WL 2480387, at *11 n.12 (M.D. Fla.); *Crmsuite Corp. v. Gen. Motors Co.*, 2021 WL 914170, at *3 n.6 (M.D. Fla. Mar. 10, 2021).

Blanco argues (at p. 26, n.8) that the foregoing statements are not clear and unequivocal. To the contrary, they are unambiguous and unequivocal. Blanco concedes that she slept on the premises. Blanco quibbles that her admissions fail to indicate the number of hours of sleep or that the sleep was uninterrupted. But again, these requirements pertain to whether sleep time can be excluded from aggregate hours worked. Blanco cannot evade her numerous admissions to defeat summary judgment.[18]

### 8. *Blanco was not sleeping while working*

Blanco argues (at p. 29) that the District Court interpreted the phrase "working and sleeping" to mean effectively "sleeping while working." The DOL (at pp. 18-20) parrots the argument. The argument is a strawman. This is not a case where a person nodded off while he was supposed to be working a night shift job.

The District Court painstakingly laid out the record evidence which confirmed that Blanco slept while staying overnight in the Parent's home. The court determined that (a) Blanco stayed at the Parents' residence for five consecutive

---

[18] Blanco has not repudiated these statements or otherwise sought relief from the District Court. Blanco reaffirms these statements in her brief to this Court (at p. 25): "[S]leeping/staying with their children … was her most important job duty as a full-time nanny." *See United States v. Colston*, 4 F.4th 1179, 1187 (11th Cir. 2021) (A party can, at a court's discretion, be held to certain kinds of concessions that counsel makes on appeal, say, about the facts or evidence in a specific case.).

nights each week [A. 47, ¶¶ 9, 58]; and (b) Blanco slept and studied English during her shifts [e.g., id. ¶¶ 7, 78; A. 93-1, pp. 70-71; A. 45, ¶¶ 2, 7; A. 58, ¶ 4].

Blanco herself admitted sleeping during her shifts, in her deposition: she could not say that she "never" slept at the house [A. 93-1, p. 70]; she sometimes "enter[ed] into a sleep[-]like state" [id., p. 70-71]; and sometimes "the baby would wake [her] up." [id., p. 67]. Further, she also acknowledged that, at night, while she was in the bedroom with two children, the lights were out; the only furniture available to her in the room was a bed; and, sometimes—despite the floors and doors creaking—the children would manage to sneak out of bed and go to their parents' bedroom. [A. 93-1, pp. 104, 106-107; 133-134]. Blanco testified that she remained in the bedroom at night while the children slept. [A. 93-1, pp. 105-106.]. Blanco testified that "generally … the younger girls … when they fell asleep they would not wake up unless there was noise." [A. 91-3, p. 57]. When not sleeping in her bed, Blanco would "study English on Duolingo." [A. 93-1, pp. 70, 78]. After putting the daughters to sleep at 8:00 or 9:00 p.m., Blanco would shower and then change into her pajamas, robe and slippers. [A. 93-1, pp. 68-69; SA. 53-2, 53 ; SA. 53-3, 34]. After her housekeeping responsibilities were complete between 10:00 and 11:00 p.m., Blanco would retire for the evening. [A. 93-1, pp. 88, 96-98, 100; SA. 53-2, ¶ 27]. The bedroom has a bed dedicated to the night nanny, the lights were off, and two children were asleep so there could not be any noise. [A. 93-1, pp. 51, 53; SA.

53-2, ¶ 33].  The room contains a nightstand (used by Blanco), but no chair. [A. 105-106; SA. 53-2, ¶¶ 33, 43].

There is nothing to do in that darkened room other than sleep.  It was expected that Blanco was going to be sleeping for much of the night.  Blanco was not working while she was sleeping.  She was sleeping when she was not working, which was much of the night.  Blanco testified that she remained in her bed at night while the children slept. [A. 93-1, pp. 105-106.].

Blanco's testimony is consistent with that of other witnesses.  Blanco was a very heavy sleeper. [SA. 53-2, ¶¶ 35, 38].  Mr. Samuel testified that Blanco slept at his residence every night she stayed at the house. [53-2, ¶¶ 25-27].  Dr. Finch testified that Blanco was usually sleeping (from the sounds of her snoring which she heard from outside her door) on the occasions when she arrived home in the middle of the night from her work at the hospital, and on the occasions when she left for work at 4:00 a.m. [SA. 53-3, ¶¶ 28, 29].  The two other nannies testified that Blanco slept in the bedroom. [SA. 53-1, ¶¶ 15, 16, 20; SA 93-3, pp. 101-102; SA. 93-3, pp. 57, 82].  The house was small, old, and the floors creaked when they were walked on. [A. 93-1, p. 134; SA. 53-2, ¶ 28].  It was easy to determine whether household members were asleep or awake. [Id.].

In the mornings, "right after [she] woke up," Blanco would change from her pajamas into her uniform. [A. 93-1, pp. 116-117].  After assisting the children in

getting ready for school, Blanco had the home all to herself between 7:50 a.m., when Trask took the children to school, and 9:00 a.m. when Blanco ended her shift. (A. 93-1, p. 78). Trask testified that during this time, Blanco would make herself breakfast. [A. 93-4, pp. 90, 106-107]. On Friday mornings after her work shift, Blanco attended gymnastics and different classes. [A. 93-1, pp. 101-103].

From Monday through Thursday, from 9:00 a.m. to 7:00 p.m., Blanco had no work responsibilities and was free to leave the premises, as she almost always did. During the day, the other nannies, Grace Trask and Adrianna Gomez, looked after the children and provided housekeeping services. This freed Blanco from cleaning or other housekeeping tasks. [SA. 53-1, ¶18]. Gomez and Trask testified that, on the nights that they stayed through the night at the Samuel-Finch residence (e.g., Fridays or Saturdays or other days Blanco was off work), they were able to retire for the night at 10:00 or 11:00 p.m. Both testified that there were no interruptions to their sleep time, and the children slept through the night (as did they). [SA. 53-1, ¶ 17; 93-4, pp. 89, 108, 118].

Blanco treated the Parents' home as her residence. The room had a nightstand or night table which she used and stored clothing, books and papers. [A. 93-1 pp. 93-96, 107-108, 110, 130; SA. 53-1, ¶ 19]. An alarm clock was placed on the nightstand. [A. 93-1, pp. 107-108]. In the living room, Blanco kept a Bible open to Psalm 91 to protect against the pandemic, and she affixed religious paraphernalia

she purchased throughout the house. [A. 93-1, pp. 94-96]. Blanco affixed her personal rosary to the wall "over the bed she was supposed to be in" and hung other religious paraphernalia at the foot of her bed. [A. 93-1 pp. 94-96; AS. 53-2, ¶¶ 33, 45].

### B. The Court Should Defer to the DOL's 2014 Final Rule, but Not the DOL's amicus brief

The DOL (at p. 23 n.8) claims that its "interpretation of the FLSA in its Part 785 regulations and related sub regulatory guidance, as well as an amicus brief, should be given deference." (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).[19] "Under *Skidmore*, an agency's interpretation may merit some deference depending upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Pugliese v. Pukka Dev., Inc.*, 550 F.3d 1299, 1305 (11th Cir. 2008) (citations and internal quotations omitted).

Deference is unmerited because the DOL's amicus brief departs from all existing guidance and fails to address forthrightly the central issue in this case and which was the basis of the District Court's decision – whether sleep time exclusion

---

[19] As stated, there are no issues in this case that would implicate Part 785. Part 785 deals with hours worked, and not the Live-in domestic worker exemption (addressed in Part 552).

rules should be grafted onto the requirements for the Live-in domestic service employee exemption. The DOL fails to not only take up the argument but also to address any adverse precedent, e.g., *Sabhnani* and *Canizales*, which hold that sleep time exclusion rules are not intended add additional requirements to the Live-in exemption. The DOL's position conflicts with the existing rule articulated in the 2013 Final Rule and other administrative guidance. Finally, the DOL fails to explain why this Court should retroactively modify the definition in the 2013 Final Rule. As discussed below, if the DOL wants to modify its regulations, there is a process (including notice and comment) which it must adhere to under the Administrative Procedure Act. The DOL cannot circumvent that process through an amicus brief. Simply stated, the brief lacks the power to persuade.

Although the DOL does not claim deference under *Auer v. Robbins*, 519 U.S. 452 (1997),[20] *Auer* deference is unmerited when the agency's interpretation "does not reflect the agency's fair and considered judgment on the matter in question." *Auer*, 519 U.S. at 462. This occurs where, as here, the agency's interpretation conflicts with a prior interpretation, *see e.g.*, *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 515 (1994). Similarly, deference is unwarranted where it would "validate the application of a regulation that fails to give fair warning of the conduct it

---

[20] *Auer* deference is where a federal court yields to an agency's interpretation of an ambiguous regulation that the agency has promulgated.

prohibits or requires." *Glob. Green, Inc. v. S.E.C.*, 631 Fed. Appx. 868, 870 (11th Cir. 2015).

In *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), the Supreme Court held that

[A] court may not defer to a new interpretation, whether or not introduced in litigation, that creates "unfair surprise" to regulated parties. That disruption of expectations may occur when an agency substitutes one view of a rule for another. We have therefore only rarely given *Auer* deference to an agency construction "conflict[ing] with a prior" one. Or the upending of reliance may happen without such an explicit interpretive change. This Court, for example, recently refused to defer to an interpretation that would have imposed retroactive liability on parties for longstanding conduct that the agency had never before addressed. Here too the lack of "fair warning" outweighed the reasons to apply *Auer*.

139 S. Ct. at 2417-2418 (citations and internal quotations omitted).

In this case, it would be fundamentally unfair for the DOL to alter the requirements for the Live-in exemption through an interpretation first advanced in an amicus brief, and then seek retroactive application of the newly announced standard to impose liability on the Parents. *Dupont v. Smiley*, No. 16-1189, 585 U.S. ___ (June 28, 2018), *cert. denied* (Statement of Gorsuch, J.) (Bestowing deference to an agency brief filed in a case on appeal would "undermine the Administrative Procedure Act's structure by incentivizing agencies to regulate by *amicus* brief, rather than by rule.").

The Court should reject any effort at "back door rulemaking" where an agency attempts to mold statutory interpretation and establish policy by filing "friend of the

court" briefs in private litigation.[21]  If the DOL wants to revisit the Live-in domestic employee exemption, then rulemaking efforts in accordance with the Administrative Procedure Act must be followed.

In contrast, the 2013 Final Rule's definition merits deference under *Auer.*  The 2014 Final Rule is an exhaustive exegesis on the application of the Fair Labor Standards Act to domestic service employees.  The 2013 Final Rule comprises 103 pages in the Federal Register and was based on a notice of proposed rulemaking which yielded more than 26,000 written comments from a broad array of constituencies.  The rulemaking period lasted 20 months. *See* 78 Fed. Reg. at 60460. The agency's treatment of the subject was comprehensive by any measure.  And the requirements for the Live-in domestic service employee exemption were consistent with prior and subsequent administrative guidance and judicial precedent.

In sum, the meaning of "reside" for purposes of the Live-in exemption is found in the 2013 Final Rule and in other agency promulgations.   These promulgations provide a simple bright line rule to avoid costly and endless

---

[21] *See* Deborah Thompson Eisenberg, *Regulation by Amicus: The Department of Labor's Policy Making in the Courts*, 65 Fla. L. Rev. 1223, 1223-1226 (2013) (describing DOL's exploitation of deference principles to mold statutory interpretation and establish policy by filing amicus briefs in private litigation, which can "undermine the democratic values of accountability, transparency, public participation, and reflective, reasoned decision making embodied in the Administrative Procedure Act (APA).").

courtroom disputes over varying facts and circumstances as to what constitutes "residing" in the household.

### C. The Issue of the Parents' Status as an FLSA Employer is not Amenable to Summary Disposition

#### 1. *The Parents are not barred from simultaneously disclaiming employer status and asserting the Live-in exemption*

Blanco argues (at pp. 46-47) that the Parents cannot simultaneously disclaim being Blanco's employer while asserting the Live-in exemption (which cannot be claimed by a third-party employer). As a third-party employer, Amazing Gracie, LLC (Blanco's employer) cannot take advantage of the Live-in exemption. However, if the Court were to determine that one or both parents were Blanco's employer, then the Parent(s) could take advantage of the exemption. Although Blanco never alleged a joint employer relationship (either in the District Court or to this Court), household members, even if considered joint employers, can get the benefit of the exemption. *See* 29 C.F.R. § 552.109(a).

#### 2. *The joint employment issue was forfeited and is not properly before the Court*

The DOL argues (at p. 28) that the Parents were "joint employers" with Amazing Gracie, LLC, and cannot negate the existence of an employment relationship by delegating certain tasks to that agency. The DOL is quibbling over language. It is certainly possible for an "employer" to relinquish sufficient control over the employment relationship – by hiring others to act as the employer and who

45

will thereafter perform the functions of an employer – such that an employer/employee relationship no longer exists between the original employer and employee. Otherwise, every nanny would be employed under the FLSA by the person who pays the agency although the effect of such a rule would go far beyond nannies.

Moreover, Blanco did not argue the joint employer issue to the District Court. Although an appellate court can affirm on any basis established in the record, reversals do not work that way. *See e.g.*, *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1296 (11th Cir. 2010) (describing the Eleventh Circuit's "well-established rule against reversing a district court judgment on the basis of issues and theories that were never presented to that court—issues not raised in the district court should not be considered on appeal."). Blanco cannot now raise the joint employer issue in this Court (and apparently does not intend to). The DOL likewise cannot raise the issue.

Similarly, the DOL raises an argument based on *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1309 (11th Cir. 2013). *Lamonica* holds that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages. *Lamonica* is about joint liability for directors and owners of corporate employers. There is no evidence, or even the allegation, that either of the Parents

was an officer, supervisor, director, employee or owner of Amazing Gracie, LLC. All evidence is to the contrary. Further, the issue was not raised in the District Court.

### 3. *Because Blanco's employment terminated before the effective date of the recission of 29 C.F.R. § 791.2, that provision controls in this case*

Assuming arguendo that the Court addresses the joint employer issue, the definition of "joint employer" for the purposes of the FLSA is set forth in 29 C.F.R. § 791.2. The rule as it existed at the beginning of the period relevant to this dispute is set forth in 29 C.F.R. § 791.2 Joint Employment (Effective to March 15, 2020) [SA. 52-2]. The initial rule was unhelpful in determining what facts resulted in a finding of joint employment. *See Joint Employer Status Under the Fair Labor Standards Act*, 85 Fed. Reg. 2820-01, 2020 WL 225175 (January 16, 2020) ("The Department is concerned that part 791 does not provide adequate guidance for the most common joint employer scenario under the Act—where an employer suffers, permits, or otherwise employs an employee to work, and another person simultaneously benefits from that work."). For that reason, 29 C.F.R. § 791.2 was amended effective March 16, 2020. *See Determining Joint Employer Status under the FLSA (Effective: March 16, 2020 to October 4, 2021)* [SA. 53-3]. The amended rule was later rescinded, and no amended rule was provided in its place. *See Rescission of Joint Employer Status Under the Fair Labor Standards Act Rule*, 86 Fed. Reg. 40939-01, 2021 WL 3207510 (July 30, 2021). The effective date was

extended to October 5, 2021, i.e., after Blanco's termination.  *See Rescission of Joint Employer Status Under the Fair Labor Standards Act Rule: Delay of Effective Date*, 86 Fed. Reg. 52412-01, 2021 WL 4263287 (September 21, 2021).  Accordingly, the rule that existed prior to the effective date of the rescission is operative in this dispute.  The DOL argues (at p. 20, n.10) that because the rule was rescinded, the rule should not be relied upon.[22]  However, since the recission was effective October 5, 2021, the rule controls notwithstanding its subsequent recission.[23]

Under the operative version of Section 791.2(a)(1), ''four factors are relevant to the determination'' of whether the other employer is a joint employer – whether the other person: (1) hires or fires the employee; (2) supervises and controls the employee's work schedule or conditions of employment to a substantial degree; (3) determines the employee's rate and method of payment; and (4) maintains the employee's employment records.  The potential joint employer must actually exercise—directly or indirectly—one or more of these indicia of control to be jointly liable under the FLSA. *See* 85 Fed. Reg. 2858, 2859.  In other words, the power to control, without the actual exercise of that power, is insufficient to establish joint

---

[22] Otherwise, neither the DOL nor Blanco mentions Section 791.2 (any version).

[23] *Valle v. Ceres Envtl. Services, Inc.*, 2022 WL 1667015 (11th Cir. May 25, 2022), is not to the contrary.  The court did not consider the rescinded regulation as the dates of employment at issue preceded the effective date of the recission.

employer liability. "No single factor is dispositive in determining joint employer status under the Act." *Id.* Whether joint employment exists depends on how all the facts in a particular case relate to these factors, and the weight to give each factor will vary depending on the circumstances of how that factor does or does not suggest control in the particular case. The regulation specifically excludes consideration of the employee's economic dependence on the potential joint employer. *Id.*

### 4. *Numerous facts in dispute preclude summary judgment on the issue of whether the Parents were Blanco's employer*

#### a. *Defendant Lindsey Finch*

Dr. Finch was not present to act as Blanco's employer. [SA. 53-3, ¶ 25; A. 60-5, pp. 42-44]. Dr. Finch testified that she had no role in the nanny operation including scheduling, payroll and regulatory compliance. [SA. 53-3, ¶ 26].[24] She retained the firm of Amazing Gracie, LLC, to perform that function. [SA. 53-3, ¶¶ 25, 26; A. 60-5, pp. 42-44]. Dr. Finch testified that she asked the agency that employed Blanco for a certain number of hours to be covered and that she did not direct who among the nannies appeared at any particular time. [SA. 53-3, ¶ 25; A. 60-5, pp. 42-44]. Dr. Finch never spoke with Blanco about sleeping arrangements,

---

[24] The lone exception was during the eight-week period when the family separated from Nannies with Love and before the arrangement with Amazing Gracie LLC was created. In that interim period, Dr. Finch paid the nannies directly by personal check and disclosed the amounts paid to a payroll company – NannyChex, LLC – which made the payments to the taxing authorities and issued W-2s to the nannies. [Id.].

but she believed that Blanco was free to make whatever sleeping arrangements she wished. [SA. 53-3, ¶ 22]. Dr. Finch did not know at what hours Blanco came and left while Blanco was employed. [SA. 53-3, ¶ 18]. Dr. Finch did not know Blanco's or the other nannies' particular job duties (such as who was responsible for giving the girls dinner or bathing them) and did not know the hours Blanco worked. [SA. 53-3, ¶ 18]. Dr. Finch did not maintain employment records for the nannies. [Id.]. Dr. Finch did not control or supervise Blanco and her phone records produced in discovery indicate that Dr. Finch never called Blanco once, and that Blanco only called Dr. Finch once, and it was a missed call. [SA. 53-3, ¶¶ 18-21].

Blanco testified she was directed to communicate only with Trask, not the Parents, regarding pay adjustments and other employment matters. [A. 93-1, pp. 86-87, 113-116].[25] When Blanco complained about the reduction in her work hours, the Parents did not respond. [Id.]. Blanco admits that it was Trask who fired her. [A. 93-1, pp. 45, 86-87].

### b. Defendant Anand Samuel

Mr. Samuel did nothing that would cause him to be Blanco's employer. Mr. Samuel did not pay Blanco, either directly or indirectly, did not direct her comings and goings, did not set or modify her work schedule, and did not direct the discharge

---

[25] The DOL alleges (at p. 27) that the Parents communicated instructions to the nannies through a group text messaging application. The cited material does not support that claim. [A. 93-4, pp. 92-93].

of Blanco's work duties. [A. 53-2, ¶¶ 13, 14].  Mr. Samuel did not hire, fire, or pay Blanco.  He could hardly have done so given the language barrier. [A. 53-2, ¶¶ 13, 14].   His knowledge of the terms of Blanco's employment was acquired after Blanco's employment ceased. [A. 53-2, ¶ 15].   Prior to then, he did not know Blanco's schedule, pay rates, or even the method or frequency by which she or the other nannies were paid. [Id.].  Mr. Samuel had no operational control over, and knew little about, Blanco's employer, Amazing Gracie, LLC. [A. 53-2, ¶ 16].  He did not maintain employment or time records for any of the nannies. [A. 53-2, ¶ 13(d)].

In sum, there is a genuine issue of material fact as to whether either Parent was Blanco's employer when Blanco was employed by Amazing Gracie, LLC.

### 5. *Blanco fails to establish that all material facts are undisputed*

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. *See e.g.*, *Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003).  Perhaps Blanco has some evidence potentially helpful to her on this issue. But that does not mean there is no dispute of material fact.  Both Blanco's and the DOL's argument fails to grasp that summary judgment requires more than pointing to evidence that may support the moving party's version of events.  Blanco must show that the nonmoving party's is either immaterial or unworthy of credence.  The

District Court was correct in holding that "the facts as [the Parents] present them, and when read in the light most favorable to them, as the nonmoving party, show that there is indeed a genuine issue of material fact as to this issue, to be resolved through trial." *Blanco*, 2022 WL 3139189, at *6.

### 6. Blanco's evidence that the Parents were Blanco's employer is legally insufficient

In arguing that the Parents were Blanco's employer, Blanco relies upon the six-part test from Eleventh Circuit's decision in *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1312 (11th Cir. 2013). *Scantland* provides the wrong standard. *Scantland* and its six-part test are used to determine whether a Blanco is an employee versus an independent contractor. The parents do not dispute that Blanco is an employee; they contend that she is not <u>their</u> employee.

A fair reading of the statutory and regulatory text indicates that the Parents are not Blanco's employer. 29 U.S.C. § 203(d) provides that an employer is "any person acting directly or indirectly in the interest of an employer *in relation to an employee*." (emphasis added). Someone who hires an agency to provide a nanny is not acting "directly or indirectly in the interest" of the nanny agency "in relation to that nanny." Otherwise, every working parent who hires a nanny through an agency would be liable for FLSA violations. In light of *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018), the FLSA's statutory language should be construed fairly, not expansively.

In sum, the District Court correctly ruled that summary judgment was precluded due to disputed material facts on the issue of whether either Parent was Blanco's employer.

## **CONCLUSION**

For the foregoing reasons, the Parents respectfully request that the Court affirm the well-reasoned decision of the District Court.


Dated:  February 28, 2023.


Respectfully submitted,

*/s/Mark J. Beutler*
MARK J. BEUTLER, ESQ.
Attorney for Appellees
Florida Bar No. 0023400
Email: mjb@mjbpa.com & jmm@mjbpa.com
**LAW OFFICES OF**
    **MARK J. BEUTLER, P.A.**
9400 S. Dadeland Boulevard, Suite 600
Miami, FL 33156
Tel.:  305-487-0942 | Fax: 786-513-4651

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P.32(a)(7)(B) because it contains 12,985 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type of style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared proportionally spaced typeface using 14-point Times Roman font.

*/s/Mark J. Beutler*
Mark J. Beutler, Esq.
LAW OFFICES OF
   MARK J. BEUTLER, P.A.
ATTORNEY FOR APPELLEES
9400 South Dadeland Blvd., Suite 600
Miami, FL 33156
Tel: 305-487-0942 | Fax: 786-513-4651
mjb@mjbpa.com   jmm@mjbpa.com
Florida Bar No. 0023400

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on February 28, 2023, a true and correct copy of the foregoing Brief was served via the Courts EFS system on each attorney who has appeared in this case and is registered for electronic filing.


*<u>/s/Mark J. Beutler</u>*
Mark J. Beutler, Esq.
Florida Bar No. 0023400